UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

GEORGE S.,[1]

               Petitioner,

v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

           Respondent.

Case No. 1:21-CV-00183-CWD

**MEMORANDUM DECISION AND ORDER**

**INTRODUCTION**

Petitioner brought this matter for judicial review of Respondent's denial of his application for benefits under Title II of the Social Security Act for a period of disability beginning April 13, 2013. (Dkt. 1.) The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record (AR). For the reasons set forth below, the Court will reverse and remand the decision of the Commissioner for further proceedings.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

On October 9, 2019, Petitioner protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (AR 72.) He alleged a disability onset date of April 13, 2013, due to physical and mental impairments, including cervical strain, left and right upper extremity radiculopathy, right lower extremity radiculopathy, right foot condition, right hand condition, lumbosacral strain, temporomandibular joint disorder, gastroesophageal reflux disease, post-traumatic stress disorder with traumatic brain injury, and chronic fatigue syndrome. (AR 126-39.) Petitioner's application was denied upon initial review and on reconsideration. (AR 72.) A hearing before Administrative Law Judge (ALJ) David Willis took place via telephone on September 17, 2020, at which the ALJ heard testimony from Petitioner and a vocational expert. (AR 69-87.) During the hearing, Petitioner amended his alleged onset date to July 17, 2017. (AR 72.)

On November 13, 2020, the ALJ issued a written decision finding Petitioner was not under a disability from July 17, 2017, through his date last insured of December 31, 2018, and therefore found Petitioner is not disabled. (AR 69-87.) The ALJ found Petitioner suffers from the severe impairments of degenerative disc disease; mild neurocognitive disorder; and post-traumatic stress disorder. (AR 74.)

**MEMORANDUM DECISION AND ORDER - 2**

The ALJ determined Petitioner retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c),[2] except:

> lift, carry, push, or pull up to twenty five pounds frequently and fifty pounds occasionally; stand and/or walk up to six hours of an eight hour day; sit up to six hours of an eight hour day; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; never climb ladders, ropes or scaffolds; never be exposed to unprotected heights or moving mechanical parts or operate a motor vehicle as part of the employment; limited to simple, routine, repetitive task jobs, unskilled jobs, SVP 1 and 2 type jobs; limited to simple work related decisions utilizing judgment or dealing with changes in the work setting; only occasionally interact with supervisors, coworkers, and members of the general public.

(AR 76.) The ALJ concluded at step four[3] that Petitioner could not perform his past work as a marketing analyst; driver, sales representative; or airline security representative. (AR 81.) The ALJ therefore proceeded to make findings at step five, concluding Petitioner retained the RFC to perform other jobs that exist in significant numbers in the national economy, such as laundry worker I, store laborer, and linen room attendant. (AR 82.)

---

[2] Medium work requires the ability to lift no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds, and requires standing or walking, off and on, for a total of 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying of objects weighing up to 25 pounds. Sitting may occur intermittently during the remaining time. "In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time." SSR 83-10. *See also* 20 C.F.R. § 404.1567(c).

[3] For a summary of the process, *see Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) ("The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v).").

**MEMORANDUM DECISION AND ORDER - 3**

Petitioner timely requested review by the Appeals Council, which denied his request on March 17, 2021. (AR 1-6.) Petitioner timely appealed this final decision to the Court on April 27, 2021. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of Petitioner's date last insured of December 31, 2018, Petitioner was fifty-five years of age, which is defined as an individual of advanced age. 20 C.F.R. § 404.1563. (AR 81.) He completed college[4] and his prior work was semi-skilled to skilled at the sedentary to medium exertional levels. (AR 81, 122.)

## ISSUES FOR REVIEW

1.    Whether evidence submitted to the Appeals Council should be considered upon judicial review?

2.    Whether the ALJ reasonably evaluated Petitioner's subjective symptom testimony concerning his physical impairments?

3.    Whether the ALJ's failure to consider lay witness statements constitutes harmless error?

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision, unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*,

---

[4] Petitioner graduated with a bachelor's degree in Political Science. (AR 122.) He later served in the military. (AR 386.)

**MEMORANDUM DECISION AND ORDER - 4**

139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id*.

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id*.

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin*., 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id*.

Petitioner's assignments of error challenge the ALJ's step four and five findings regarding Petitioner's residual functional capacity ("RFC") and his ability to sustain full-time work at the medium exertional level. The Court finds Petitioner's arguments persuasive, as explained below.

## DISCUSSION

At step four of the sequential evaluation, the ALJ is required to make factual findings regarding: (1) the claimant's RFC; (2) the physical and mental demands of the claimant's former employment; and (3) whether the claimant's RFC permits him to return to previous occupations. Social Security Ruling (SSR) 82–62, 1982 WL 31386 (1982).

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The assessment of a claimant's RFC must be

"based on all the relevant evidence in [the claimant's] case record." *Id. See also Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). When a claimant requests an administrative hearing, it is the duty of the ALJ to determine the claimant's RFC from the record. 20 C.F.R. § 404.1546(c). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity," and the ALJ's findings of RFC need not correspond precisely to any physician's findings. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir.2001). It is the claimant who bears the burden of proof of establishing his or her RFC. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

Here, Petitioner contends there is insufficient evidence to support the ALJ'S finding that he can sustain full time work at the medium exertional level as defined in 20 C.F.R. § 404.1567(c) and SSR 83–10 based upon his physical impairments, which include cervical pain, tingling and numbness in his upper extremities, and impaired cervical range of motion. Pet. Brief at 7. (Dkt. 14.) If Petitioner is limited to light exertional work, due to his age and his mental impairments limiting him to unskilled work, Petitioner would be deemed disabled under Medical-Vocational Rule 202.04. 20 C.F.R. Part 404 Subpt. P, App2, 202.04.[5] (*See also* AR 117 "to deny [benefits], I either have to find him capable of returning to prior work…or find that he can do medium work.").

---

[5] Rule 202.04 provides that a person of advanced age with at least a high school education limited to unskilled work would be deemed disabled.

**MEMORANDUM DECISION AND ORDER  - 6**

1.     **New Evidence**

Before conducting its review, the Court must first determine what evidence to

consider. Petitioner submitted additional evidence from the Department of Veterans

Affairs dated February 9 through March 1, 2018, to the Appeals Council. (AR 2.) These

records included a February 9, 2018 Compensation and Pension ("C&P") physical

examination performed by Dr. Hellen Kim for the Veterans Administration. (AR 12 –

68.) Dr. Kim diagnosed cervical strain based upon Petitioner's complaints of neck pain

with intermittent numbness or tingling down the right arm, with loss of mobility. (AR 22-

23.) Range of motion testing revealed abnormal results, and pain. (AR 23-24.) No

imaging was ordered by Dr. Kim.

A later examination conducted by Dr. John Dudek on May 3, 2019, confirmed

Petitioner exhibited limited cervical range of motion, and imaging conducted at that time

revealed the presence of cervical spondylosis. (AR 577.) Dr. Dudek was critical of Dr.

Kim's failure to order imaging on February 9, 2018, when Petitioner described symptoms

consistent with radiculopathy. (AR 577.) The ALJ had the benefit of reviewing Dr.

Dudek's examination notes and findings, but not Dr. Kim's original examination notes

and findings, before reaching his decision.

The ALJ found that, despite "no evidence of cervical spondylosis during the

period at issue…this condition likely did not occur overnight…." The ALJ "considered

this impairment, which supports limiting the claimant to medium work activities. The

claimant's physical activities, including (but no[t] limited to) paddle boarding, taking his

dog for walks, and doing yoga also demonstrate a good physical capacity and further

MEMORANDUM DECISION AND ORDER  - 7

supports an ability to do medium work type activities." (AR 81.) The ALJ also found the opinions of the reviewing physicians for the Disability Determination Services, who determined Petitioner retained the ability to sustain work at the medium exertional level, "persuasive." (AR 80.)

The Appeals Council found that the additional medical records dated February 9 through March 1, 2018, from the Department of Veterans Affairs, including Dr. Kim's C&P, did "not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." (AR 2.)[6]

Petitioner directly challenges the Appeals Council's decision, contending that the VA medical records dated February 9 through March 1, 2018, and in particular Dr. Kim's examination findings dated February 9, 2018, "support a reasonable probability that if considered, the ALJ's unfavorable decision would change." Pet. Brief at 8. (Dkt. 14.) Petitioner requests the Court remand this matter so the ALJ may consider the case in light of the additional records. Respondent argues the Court lacks jurisdiction to review the Appeals Council's decision. Resp. Brief at 5. (Dkt. 15.)

Here, the Appeals Council did not fail to consider the additional records. Rather, the Appeals Council made a finding that the records "would not change the outcome" of

---

[6] 20 C.F.R. § 404.970(a)(5) (effective Dec. 16, 2020) provides that the Appeals Council will review a case at a party's request if the Appeals Council "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." However, the Appeals Council will consider additional evidence only if the claimant shows "good cause for not informing [the Appeals Council] about or submitting the evidence…because: you actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing…." 20 C.F.R. § 404.970(b)(iv).

the decision. 20 C.F.R. § 404.970(a)(5). The Appeals Council is not required to make any particular evidentiary findings in support of its decision. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011). Here, the Court lacks jurisdiction to review the decision by the Appeals Council, and cannot remand based upon a direct challenge to its decision. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).

However, to the extent Petitioner is asking the Court to review the additional records in the Court's overall review of the ALJ's final decision, Respondent concedes the Court may do so.  Resp. Brief at 5. *Taylor*, 659 F.3d at 1232. Respondent acknowledges the evidence is included in the record before the Court. *Taylor*, 659 F.3d at 1232. Accordingly, the Court will consider the additional medical evidence, including Dr. Kim's examination notes and findings, in evaluating whether substantial evidence supports the ALJ's decision. *See, id.*

## 2.    Subjective Symptom Testimony

The ALJ considered Petitioner's subjective symptom testimony concerning his physical impairments, finding his testimony did not substantiate his allegations of disabling limitations. The ALJ concluded that, although Petitioner's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical and other evidence in the record. (AR 78.)

In reaching this conclusion, the ALJ considered that, prior to Petitioner's date last insured of December 31, 2018, Petitioner had very little treatment for neck pain; physical

examination findings were minimal; and he reported walking his dog and paddle boarding for exercise, doing yoga, shopping, preparing and cooking meals, washing laundry, and traveling to Florida during the winter. (AR 80.) The ALJ noted that "there is evidence of cervical spondylosis, which the undersigned acknowledges despite no evidence of this condition prior to his date last insured." (AR 80.)

Petitioner argues the ALJ's conclusion is not supported by substantial evidence in the record and is, therefore, erroneous. Petitioner contends the record as a whole reveals Petitioner complained about neck pain to his treatment providers as early as February 9, 2018, when he complained to Dr. Kim of "neck pain constant with intermittent numbness or tingling down right arm". (AR 571.)  A later treatment record dated March 15, 2018, also reveals complaints of neck pain. (AR 416.) On July 25, 2018, Petitioner rated his neck pain as a 5 on a ten point scale. (AR 387, 390.) On September 24, 2018, Petitioner reported chronic pain at a level of 6 on a ten point scale. (AR 550.) Petitioner argues also that the ALJ did not explain how his daily activities met the threshold for transferrable work skills at the medium exertional level. Pet. Brief at 13. (Dkt 14.)

Respondent contends the ALJ reasonably addressed Petitioner's subjective complaints, and that there is sufficient evidence to support the ALJ's adverse findings regarding Petitioner's subjective symptom testimony. Respondent asserts that the ALJ's findings regarding the intensity and limiting effects of Petitioner's pain are supported by the following evidence: (1) Petitioner stopped working in 2013, but did not seek a diagnosis for the cause of his pain until 2018; (2) Petitioner worked as a real estate agent throughout 2018. Resp.'s Brief at 3-4. (Dkt. 15.); and (3) Petitioner's activities (yoga and

**MEMORANDUM DECISION AND ORDER  - 10**

paddleboarding) involve squatting, bending, reaching, and kneeling, which contradict Petitioner's claims that he could not squat, bend, or reach.

### A.    Legal Standard

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); 20 C.F.R. § 404.1529 (Mar. 27, 2017)). The claimant does not need to show "that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons[7] for doing so. *Trevizo*

---

[7] Respondent claims that the clear and convincing standard conflicts with the Social Security Act and its implementing regulations. Resp.'s Brief at 2 n.2. (Dkt. 15.) However, the United States Court of Appeals for the Ninth Circuit explained in *Lambert v. Saul*, 980 F.3d 1266 (9th Cir. 2020), that an ALJ must offer clear and convincing reasons, not mere "non-specific conclusions," and identify "which testimony [the ALJ] found not credible, and [explain] which evidence contradicted that testimony." *Id*. at 1277 (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). This is so the Court can meaningfully review the ALJ's decision. *Id*. In turn, the reasons for rejecting a claimant's testimony about his symptoms must be supported by "substantial evidence in the record as a whole." 42 U.S.C. § 405(g). In other words, the Court should be able to review the portions of the record cited in support of the ALJ's reasons and determine whether the evidence is sufficient to support them.

*v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 345, at 345-46 (9th Cir. 1991)).

When evaluating the intensity and persistence of symptoms, the ALJ must consider all the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029 at *1-2.[8] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods

---

[8] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 679 n.5 (9th Cir. 2017).

**MEMORANDUM DECISION AND ORDER - 12**

used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

### B.    Petitioner's Subjective Complaints

Petitioner completed a function report on August 28, 2018. (AR 273-281.) He described a typical day as performing chores such as making the bed and emptying the dishwasher, doing laundry once a week, food shopping if necessary, attending AA meetings on occasion, watching television, and spending time with his wife. (AR 274, 275.) He has pets that he cares for. (AR 274.) He reportedly can prepare a steak and heat up a pouch of rice for dinner a few times each week. (AR 275.) He and his wife have hired a housekeeper and a gardener to take care of more strenuous cleaning and yardwork. (AR 276.) Physically, Petitioner described he has difficulty lifting, squatting, bending, and reaching, and that he can lift only ten pounds. (AR 278.)

At the September 17, 2020 hearing, Petitioner testified he had limited range of motion in his neck and pain with movement. (AR 101.) He also testified that he experiences numbness in both upper extremities, and that he often drops things. (AR 102 – 103.) He confirmed that these symptoms existed prior to his date last insured. (AR 102 -103.)

C.     **Analysis**

The Court finds the ALJ erred in his evaluation of Petitioner's physical limitations in light of the record as a whole. First, the ALJ's reasoning is contradictory. The ALJ acknowledges Petitioner's diagnosis of cervical spondylosis and recognizes that this condition "likely did not occur overnight." (AR 81.) Yet, the ALJ ignores Petitioner's complaints of pain and radicular symptoms in both upper extremities that Petitioner contends, and that the record reflects, existed prior to his date last insured, commenting that there was "no evidence of cervical spondylosis during the period at issue." (AR 81.) The ALJ's finding that there is "no evidence" of cervical spondylosis prior to Petitioner's date last insured is contrary to substantial evidence in the record, including Petitioner's diagnostic x-ray results four months after Petitioner's date last insured; Dr. Dudek's May 3, 2019 examination findings and his reference to Dr. Kim's earlier examination notes and findings from February 9, 2018; and the findings of the DDS reviewing physicians.

For instance, the record contains the results of Petitioner's diagnostic X-rays taken on April 4, 2019, less than four months after Petitioner's date last insured. Imaging revealed focal degenerative disc and endplate changes at C5 and C6 with loss of disc heights at C5-6 and 6-7 with relatively large anterior as well as posterior endplate spurs. (AR 577, 558-59.) Given that Petitioner's neck condition did not occur overnight, the x-ray imaging contradicts the ALJ's conclusion that "treatment records…showed no physical deficit" and exhibited "minimal" objective findings. (AR 80, 81.)

Dr. Dudek's treatment notes contradict the ALJ's conclusion that there are "minimal examination findings" and "no evidence of cervical spondylosis during the

**MEMORANDUM DECISION AND ORDER - 14**

period at issue." (AR 80, 81.) Following the diagnostic X-rays, Dr. John Dudek examined

Petitioner on May 3, 2019. (AR 570.) In his examination notes, Dr. Dudek references

Petitioner's complaints of "neck pain constant with intermittent numbness or tingling

down right arm" documented by Dr. Kim on February 9, 2018. (AR 571.) And, Dr.

Dudek exclaims that, "for some reason the radiculopathy section (section 7) was

answered 'no' with no explanation, and no imaging was done!" (AR 571.)

At the May 3, 2019, examination, Dr. Dudek recorded that Petitioner experienced

chronic soreness in the neck posteriorly, worse with extension, and pain going down the

left arm posteriorly. (AR 572.) Petitioner reported pain on the right in the posterior upper

arm to the elbow, and occasionally down the posterior forearm. (AR 572.) Petitioner also

reported that his symptoms were chronic and did not change from day to day. (AR 572.)

Dr. Dudek's physical examination notes revealed abnormal range of motion of the

cervical spine in all directions, with pain; evidence of localized tenderness or pain on

palpation of the cervical spine; and tender right sided paraspinal muscles. (AR 572-73.)[9]

Dr. Dudek indicated that the impact of Petitioner's cervical spine conditions resulted in a

restriction of "no heavy lifting." (AR 577.)

And, upon initial review and upon reconsideration, the Disability Determination

Services physicians who reviewed Petitioner's medical records in connection with his

application for disability benefits determined Petitioner's cervical spondylosis was

documented by X-ray shortly after Petitioner's date last insured. (AR 134, 149.) They

---

[9] Dr. Dudek observed, however, that upon departure from the exam, Petitioner fully turned his head and looked behind him as he backed his sedan out of its parking space. (AR 577.)

MEMORANDUM DECISION AND ORDER  - 15

also concluded that this medically determinable impairment "would have been present prior to DLI, considering severity and known disease process." (AR 134, 149.)

The ALJ cannot, on the one hand "acknowledge" Petitioner's diagnosis yet, at the same time, disregard the evidence that Petitioner suffered from cervical spondylosis and radiculopathy prior to his date last insured. By disregarding the objective medical evidence, the ALJ in turn rejected Petitioner's subjective complaints of pain and his asserted inability to lift more than ten pounds based upon lack of medical evidence. This the ALJ cannot do. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). For instance, the ALJ rejected Petitioner's subjective complaints of cervical pain and radiculopathy on the grounds that he had "minimal treatment for complaints of neck pain during the period at issue and treatment records near and during the period at issue showed no physical deficits, with his neck being supple…." (AR 81.) This finding is contrary to Dr. Dudek's treatment notes, which specifically reference Petitioner's May 9, 2018 examination findings documenting cervical pain and complaints consistent with radiculopathy.

Second, the ALJ provided no explanation for his conclusion that Petitioner could perform the lifting requirements necessary to sustain work at the medium exertional level, despite evidence in the record to the contrary. The ALJ made no comment on Petitioner's statement that he could not lift more than ten pounds. Nor did the ALJ acknowledge Dr. Dudek's chart note stating— "no heavy lifting."  Yet, medium work requires the ability to lift up to fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds over the course of an eight-hour workday. The only comment the ALJ made in this regard was that Petitioner's cervical impairment

MEMORANDUM DECISION AND ORDER  - 16

"supports limiting the claimant to medium work activities." But, without further explanation, the Court cannot determine how the ALJ arrived at this conclusion. *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (ALJ must provide some analysis for the Court to reasonably discern the agency's path.).

The ALJ's reference to Petitioner's reported physical activities do not supply the Court with any further insight into the ALJ's reasoning. (AR 81.) The ALJ noted that Petitioner reportedly engaged in paddle boarding, taking his dog for walks, doing yoga, shopping, preparing meals, washing laundry, and traveling to Florida for the winter. (AR 80, 81, 389, 408, 413, 417, 436-37, 552.) These activities were reported to Petitioner's treatment providers between March 15 and September 18, 2018. However, the ALJ did not explain how these minimal, non-strenuous activities support a finding that Petitioner could sustain the lifting and carrying requirements of medium work, which are most directly impacted by Petitioner's cervical impairment. (AR 81.) None of the above described activities are, in the Court's experience, vigorous or would require lifting of up to twenty five pounds frequently and up to fifty pounds at a time on a sustained basis.

Nor did the ALJ explain how these activities, which the ALJ did not quantify in any way, translate to a work setting. Daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ must make "specific findings relating to [the daily] activities" and their transferability to conclude that a

claimant's daily activities undermine his subjective symptom testimony. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

But here, the ALJ made no specific findings concerning Petitioner's activities to support his conclusion that these activities were "transferable" to a work setting involving the lifting and carrying requirements of medium work, or that Petitioner spent a "substantial" part of his day engaged in such activities. *See Fair*, 885 F.2d at 603. For instance, although Petitioner reported paddleboarding, which arguably involves lifting a board and handling a paddle, he quantified that he did so only "when weather [is] good." (AR 408.) He reported traveling to Florida in the winter and "laying in the sun." (AR 408.) He reported doing laundry "once a week," and emptying the dishwasher once each day. (AR 275.) Petitioner also stated he was able to go to the grocery store for 30-40 minutes at a time. (AR 276.) This record does not reflect that Petitioner reported engaging in physical activity for a substantial portion of his day.

Respondent's arguments attempting to shore up the ALJ's determination are unpersuasive. Respondent first cites Petitioner's lack of treatment for his neck condition between 2015 and 2018, and Petitioner's decision, unrelated to his physical condition, to cease working in 2013. The ALJ noted Petitioner had "very little treatment for neck pain" as well, referencing medical records from 2015. (Dkt. 80.) However, Respondent fails to reference the evidence in the record that Petitioner did not complain of neck pain in 2015 (AR 381). Rather, the evidence reflects Petitioner first sought treatment for neck pain and associated symptoms on February 9, 2018, (AR 570), rendering events in 2013 and care

sought in 2015 irrelevant for purposes of assessing Petitioner's condition after the amended onset date of July 17, 2017.[10]

Respondent next references Petitioner's failure to seek treatment for his mental health symptoms. However, Petitioner does not challenge the ALJ's findings regarding Petitioner's mental health symptoms and limitations.

Last, Respondent references Petitioner's activities, claiming that paddleboarding, yoga, and stretching require bending, squatting, reaching, and kneeling, and therefore Petitioner's activities contradict his statement that he could not squat, bend, reach, or kneel without difficulty. This argument fails to address the lifting and carrying limitations that Petitioner testified about, and which would be related to Petitioner's diagnosis of cervical spondylosis. Similarly, Respondent's argument that Petitioner's work as a real estate agent undermines Petitioner's subjective symptom testimony misses the mark. The ALJ discussed Petitioner's work as a real estate agent in conjunction with his assessment of Petitioner's mental limitations, not his physical limitations, and it is not clear from the record that such work meets the exertional requirements of medium work. (AR 81.)

The Court finds the ALJ's RFC assessment is not supported by substantial evidence. The ALJ's reasons for disregarding Petitioner's testimony concerning the limitations caused by his cervical pain and radiculopathy as they relate to his ability to lift

---

[10] There is also a gap in the medical records. Petitioner sought treatment on December 4, 2015, from Primary Health Medical Group. (AR 381.) At that time, he did not complain of neck pain, and was reportedly able to engage in strenuous physical activity, such as running, pushups, and sit-ups. (AR 381.) There are no medical treatment records until February 9, 2018, when Petitioner complained of neck pain and radicular symptoms to Dr. Kim. (AR 570.) Dr. Kim's examination findings are referenced by Dr. Dudek in his chart notes dated May 3, 2019, which the ALJ had in the record. (AR 384.)

and carry, and therefore sustain the demands of work at the medium exertional level, are not supported by the record as a whole.

**2.      Lay Witness Testimony**

Petitioner contends the ALJ erred by failing to discuss or consider a lay witness statement by Petitioner's spouse without providing germane reasons. Pet.'s brief at 15. (Dkt. 14.) Respondent maintains that Petitioner failed to show prejudicial error, because the lay witness statement describes the same subjective complaints that the ALJ rejected when he considered Petitioner's subjective symptom testimony. Resp.'s Brief at 4. (Dkt. 15.) The Court finds the ALJ erred as explained below.

**A.      Legal Standard**

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (quoting *Lewis*, 236 F.3d at 511). For claims filed on or after March 27, 2017, 20 C.F.R. § 404.1520c governs how an ALJ must evaluate evidence from medical sources, which includes a clarification on how an ALJ evaluates nonmedical lay testimony. *See* 20 C.F.R. § 404.1520c(d). Under the plain language of the regulations, the ALJ must consider lay witness statements: "In evaluating the intensity and persistence" of symptoms, the ALJ "consider[s] all of the available evidence," including that from "medical sources and nonmedical sources about how [a claimant's] symptoms affect [him]." 20 C.F.R. §§ 404.1529(c)(1); 416.929(c)(1); *see also* SSR 16-3p (requiring ALJs to consider other evidence such as other non-medical sources to evaluate

symptoms). However, 20 C.F.R. §§ 404.1520c(d); 416.920c(d), specifies that the ALJ is not required to articulate how he or she considered evidence from nonmedical sources "using the requirements in subparagraphs (a) – (c)," applicable to evaluations of medical opinions.

Rather, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he [or she] must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). When rejecting third party statements which are similar in nature to Petitioner's statements, the ALJ may cite the same reasons used in rejecting the claimant's statement. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

### B.    Lay Witness Statement

The record contains a written statement from Petitioner's wife, Melinda,[11] dated August 26, 2018. (AR 264.) In it, Melinda describes Petitioner's daily routine as consisting of reading, talking on the phone, surfing the internet, and watching television. (AR 264.) She confirms Petitioner takes care of pets by feeding them, and that she assists with their care. (AR 265.) Melinda states Petitioner is in pain and lacks full range of motion and the full use of his right hand. (AR 265.) She states Petitioner is able to do

---

[11] The Court references Petitioner's wife by her first name consistent with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

some housework, such as laundry and loading and unloading the dishwasher, and that Petitioner prepares meals consisting of meat and rice in a pouch. (AR 266.) Melinda also confirms Petitioner is unable to lift more than ten pounds, and that he is limited in his ability to bend or reach. (AR 269.)

### C.    Analysis

The Court finds the ALJ erred. The ALJ never discussed, let alone mentioned, Melinda's written statement. Her statement corroborates Petitioner's testimony and is consistent with Petitioner's described limitations with regard to lifting, carrying, and reaching. The testimony by Petitioner's wife is further supported by Dr. Dudek's statement that Petitioner should avoid heavy lifting. (AR 577.) Melinda's testimony about Petitioner's ability to lift and carry directly relates to Petitioner's diagnosis of cervical spondylosis and associated radiculopathy, and concerns how these conditions might impact his physical ability to perform work related tasks.

Respondent requests the Court disregard the ALJ's error as harmless, because Melinda's statements are consistent with Petitioner's own subjective complaints, which the ALJ rejected. However, the Court cannot adopt this justification. First, the regulations clearly require the ALJ to address lay witness statements. *See Robert U. v. Kijakazi*, No. 3:20-CV-1817-SI, 2022 WL 326166, at *7 (D. Or. Feb. 3, 2022) (no provision of the new regulations unambiguously removes the ALJ's obligation to address lay witness testimony); SSR 16-3p (explaining that other sources may provide information from which inferences may be drawn about a claimant's symptoms, and that "we will consider

any statements in the record" by non-medical sources and "will consider any personal observations of the individual….").

Second, where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, the Court "cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). In the present case, the Court cannot so conclude. As discussed above, the Court rejects the ALJ's reasons for discrediting Petitioner's testimony concerning the severity and limiting effects of his pain related to his cervical spondylosis, in particular related to lifting and carrying limitations. Further, if fully credited, the lay testimony supports a conclusion that Petitioner's pain and physical limitations would not enable him to sustain the lifting and carrying requirements of full-time work at a medium exertion level. Accordingly, a reasonable ALJ could find this evidence precludes Petitioner from performing the requirements of work at this level. Consequently, the Court finds the ALJ's failure to provide reasons for rejecting the lay testimony is not harmless.

Because the ALJ failed to provide any reason for rejecting competent lay testimony, and the Court concludes the error was not harmless, substantial evidence does not support the ALJ's determination that Petitioner can perform work at the medium exertional level as set forth in the ALJ's RFC determination. Accordingly, remand is warranted on this issue.

**MEMORANDUM DECISION AND ORDER - 23**

## CONCLUSION

Based on review of the entire record, the Court finds the Commissioner's decision is not supported by substantial evidence and is the product of legal error. Therefore, the Commissioner's decision finding that Petitioner is not disabled within the meaning of the Social Security Act will be remanded.

The Court concludes the ALJ erred in his evaluation of Petitioner's subjective symptom testimony and lay witness testimony. As a result, the ALJ's RFC determination as it specifically relates to Petitioner's ability to lift and carry, and therefore perform the requirements of sustained work at the medium exertional level, is not supported by substantial evidence. A remand is appropriate where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. *Bunnell v. Barnhart*, 336 F.3d 1112, 1115-16 (9th Cir. 2003). The Court finds remand is the appropriate remedy here to allow the ALJ to reconsider Petitioner's subjective symptom testimony and lay witness testimony. The Court will therefore reverse and remand this matter for further proceedings consistent with this opinion.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED THAT:**

1.      The Petition for Review (Dkt. 1) is GRANTED.

2.      This matter is REVERSED and REMANDED to the Commissioner for further proceedings consistent with this opinion.

3.      This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: September 1, 2022

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER  - 25**